# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AARON MARCEL PALACIOS,<br><br>                              Plaintiff,<br><br>v.<br><br>RJD WARDEN, NURSE SANTOYA, DR. SANTOS,<br><br>                            Defendants. | Case No.: 3:25-cv-1352-JO-SBC<br><br>**ORDER: (1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS AND (2) DISMISSING COMPLAINT FOR FAILING TO STATE A CLAIM PURSUANT TO 28 U.S.C. §§ 1915(e)(2)(B) AND 1915A(b)** |

Plaintiff Aaron Marcel Palacios is an inmate at Richard J. Donovan Correctional Facility in San Diego, California. Proceeding *pro se*, he filed a civil rights complaint under 42 U.S.C. § 1983, alleging that a doctor and nurse at this facility failed to provide him adequate medical care for an arm infection. Dkt. 1 ("Compl.").[1] Plaintiff also filed a motion for leave to proceed *in forma pauperis* (IFP). Dkt. 2. For the reasons discussed below, the Court grants Plaintiff's IFP motion, and, after screening his complaint, dismisses it with leave to amend.

---

[1] All citations to the complaint are to the CM/ECF PageID.

## I. MOTION TO PROCEED IFP

A party may initiate a civil action without prepaying the required filing fee if the Court grants leave to proceed IFP based on indigency. 28 U.S.C. § 1915(a); *Andrews v. Cervantes*, 493 F.3d 1047, 1051 n. 1 (9th Cir. 2007). To proceed IFP, plaintiffs must establish their inability to pay by filing an affidavit regarding their income and assets. *See Escobedo v. Applebees*, 787 F.3d 1226, 1234 (9th Cir. 2015). Prisoners seeking to establish an inability to pay must also submit a "certified copy of the [prisoner's] trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). Prisoners who proceed IFP must repay the entire fee in installments regardless of whether their action is ultimately dismissed. 28 U.S.C. § 1915(b)(2); *Bruce v. Samuels*, 577 U.S. 82, 84 (2016).

In support of his IFP motion, Plaintiff has submitted a copy of his trust account statement which shows he maintained an average monthly balance of $42.84 and had $72.12 in average monthly deposits credited to his account over the 6-month period immediately preceding the filing of his complaint. Dkt. 2 at 8–9. His available balance at the time of filing was $8.50. *Id*. at 8. The Court finds Plaintiff has established an inability to pay the required $405 filing fee and GRANTS Plaintiff's IFP motion. *Id*. While the Court will not assess an initial payment, Plaintiff will be required to pay the full $405 filing fee in installments which will be collected from his trust account as set forth in 28 U.S.C. § 1915(b)(2).

## II. BACKGROUND

In November 2024, Plaintiff sought treatment for an arm infection from prison medical staff but was denied care. Compl. at 4–5. He showed Nurse Santoya and Dr. Santos a bump on his arm and told them that he believed it was an infection from injecting himself with suboxone. *Id.* at 4. Nurse Santoya told him nothing was wrong with him without examining him. *Id.* Dr. Santos examined his arm and concluded that the bump

was an overdeveloped or strained muscle and accordingly declined to treat Plaintiff with antibiotics. *Id.* Plaintiff requested medical care again the next day. *Id.* at 5. Despite "common knowledge" that failed attempts to inject suboxone can lead to muscle infections and her own experience treating these infections in other prisoners, *id.* at 16 ¶¶ 7–8, Nurse Santoya did not believe Plaintiff had a muscle infection. *Id.* at 4. She therefore refused to examine him or let him see Dr. Santos. *Id*. at 5, 15 ¶¶ 2, 4. Without antibiotics, the bump in Plaintiff's arm worsened significantly over the next two days, swelling to the size of a grapefruit. *Id*. at 6. After Plaintiff collapsed in his cell on the second day, a different nurse administered antibiotics. *Id.* at 5. Two more days passed before Dr. Santos reexamined Plaintiff's arm and sent him to an outside hospital for treatment. *Id.* Plaintiff was ultimately hospitalized for nine days and had to undergo surgery to treat his muscle infection. *Id*.

Based on these facts, Plaintiff filed a § 1983 lawsuit against Nurse Santoya and Dr. Santos, alleging that they violated his First, Eighth, and Fourteenth Amendment rights by denying him adequate medical care. *Id.* at 3–6. Plaintiff also named the Warden of the prison facility as a defendant, alleging that he failed to properly train his medical staff to provide inmates with adequate care. *Id*. at 3.

### III.   LEGAL STANDARD

Pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b), the Court must screen a prisoner's IFP complaint and *sua sponte* dismiss it to the extent that it is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (*en banc*); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010). "The standard for determining whether Plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). Rule 12(b)(6) requires that a complaint to "contain sufficient factual matter . . . to state a claim to relief that is plausible

on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). While detailed factual allegations are not required, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*

To validly plead a civil rights claim under § 1983, a plaintiff must allege (1) the violation of a right secured by the Constitution or the laws of the United States; and (2) that the violation was committed by a person acting under color of state law. *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

## IV.   DISCUSSION

Because Plaintiff bases his § 1983 suit on a violation of his Eighth Amendment right to adequate medical care,[2] the Court will first consider whether Plaintiff has sufficiently pled that Dr. Santos and Nurse Santoya acted with the deliberate indifference required to sustain such a claim when they refused to treat him with antibiotics. Then, the Court will turn to whether Plaintiff has sufficiently alleged that the Warden was personally involved in Dr. Santos and Nurse Santoya's failure to provide medical care to a degree where he can be held liable.

**A. Plaintiff's Claim Against Dr. Santos and Nurse Santoya**

The Court first considers whether Defendants Santos and Santoya acted with deliberate indifference when they refused to treat Plaintiff's arm infection such that they violated his Eight Amendment right to adequate medical care. A denial or delay of medical

---

[2]   While Plaintiff also alleges First and Fourteenth Amendment violations based on the same conduct, the Court solely analyzes his claims under the Eighth Amendment. Plaintiff's claim that prison medical staff failed to treat his arm infection invokes the Eight Amendment's protection against cruel and unusual punishment, which encompasses the right to receive adequate medical care while incarcerated. *See Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). The First Amendment contains no analogous protection, and the Fourteenth Amendment applies to denial of medical treatment claims brought by pre-trial detainees, whereas the Eighth Amendment applies to claims brought by incarcerated individuals like Plaintiff. *Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1124 (9th Cir. 2018).

care for a prisoner's serious medical needs may constitute a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 104-05 (1976). "In order to prevail on an Eighth Amendment claim for inadequate medical care, a plaintiff must show 'deliberate indifference' to his 'serious medical needs.'" *Colwell v. Bannister,* 763 F.3d 1060, 1066 (9th Cir. 2014), quoting *Estelle*, 429 U.S. at 104. "Deliberate indifference 'may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care.'" *Id*. (quoting *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988)). "[A] prison official violates the Eighth Amendment when two requirements are met. First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Second, Plaintiff must allege the prison official he seeks to hold liable had a "sufficiently culpable state of mind . . . [T]hat state of mind is one of deliberate indifference to inmate health or safety." *Id.* (internal citations and quotations omitted). A prison official can be held liable only if he "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

    Here, Plaintiff fails to allege that either Dr. Santos or Nurse Santoya knew of and deliberately disregarded a serious medical need. Plaintiff alleges that these care providers knew that he had a bump in his arm after injecting suboxone, Compl. at 4, 16 ¶¶ 7–8, but he does not plead facts to show that they knew he was at risk of infection as a result. With regard to Nurse Santoya, Plaintiff alleges the opposite: she believed he did *not* have an infection when she looked at his arm on November 26. *Id.* at 4. At most, Plaintiff establishes that Nurse Santoya should have known he had an infection based on "common knowledge" that failed suboxone injections can lead to infection and her experience with these kinds of infections in other prisoners. *Id.* at 16 ¶¶ 7–8. But because Plaintiff has not pleaded that Nurse Santoya actually knew that the bump on his harm was a sign of infection

and consciously disregarded that risk by not treating him, he has not adequately pleaded that she acted with deliberate indifference toward him in violation of the Eighth Amendment. Similarly, Plaintiff alleges that Dr. Santos misdiagnosed his infection as a muscle strain on November 26, not that he knew that the bump on Plaintiff's arm presented a risk of infection but chose not to treat it. *Id.* at 4. While such misdiagnoses may suggest negligence or even medical malpractice, they do not rise to the level of deliberate indifference actionable as an § 1983 Eighth Amendment claim. *See Farmer*, 511 U.S. at 835 (negligent diagnosing insufficient to sustain Eighth Amendment claim); *Estelle*, 429 U.S. at 106 n. 14 ("mere allegations of malpractice do not state a claim"); *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990) (gross negligence insufficient to state claim for denial of medical care to prisoner). Because Plaintiff has failed to plead that either Nurse Santoya or Dr. Santos actually knew there was a risk of serious infection when they declined to treat him with antibiotics on November 26 and 27, he has failed to state a constitutional claim against them for denial or delay of medical care.

**B. Plaintiff's Supervisory Claims Against the Warden**

The Court next considers whether Plaintiff has sufficiently pleaded that the Warden was personally involved or had a role in causing him to be deprived of medical care. A plaintiff "must plead that each Government official defendant, through the official's own individual actions, has violated the constitution." *Iqbal*, 556 U.S. at 676–77 (rejecting argument that "a supervisor's mere knowledge of his subordinate's [unconstitutional actions] amounts to the supervisor's violating the Constitution."). A supervisor may only be held liable under § 1983 if a plaintiff has alleged specific facts which show "'either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 855 F.2d 642, 646 (9th Cir. 1989)). Because there is no *respondeat superior* liability under § 1983, allegations "must be individualized and focus on . . . each individual defendant whose acts

or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (citing *Rizzo v. Goode*, 423 U.S. 362, 370–71 (1976)); *Palmer v. Sanderson*, 9 F.3d 1433, 1437–38 (9th Cir. 1993).

Although Plaintiff names the Warden as a defendant in this action, he does not specify what the Warden did or failed to do that violated Plaintiff's constitutional rights. Aside from general allegations that the Warden "is in charge" of training employees and ensuring that inmates receive medical care, Compl. at 3, Plaintiff's factual contentions focus solely on his communications with Nurse Santoya and Dr. Santos and their failure to promptly treat him for his arm infection after he sought medical care. He provides no specific, individualized allegations regarding the Warden and the role he played in causing these events to happen. *See Leer*, 844 F.2d at 633 ("The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation."). Plaintiff's complaint therefore fails to state a plausible claim for relief against the Warden. *Iqbal*, 556 U.S. at 678.

Finally, because the Court dismisses Plaintiff's complaint, it considers whether to grant leave to amend. "A district court should not dismiss a pro se complaint without leave to amend unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (internal quotations omitted). Because Plaintiff is proceeding *pro se* and could possibly plead facts that would cure the deficiencies of his complaint, the Court grants leave to amend.

## V.  CONCLUSION AND ORDER

For the reasons discussed above, the Court:

1. **GRANTS** Plaintiff's motion to proceed IFP. Dkt. 2.

2. **ORDERS** the Secretary of the CDCR, or his designee, to collect from Plaintiff's prison trust account the $405 filing fee owed in this case by collecting monthly payments from the account in an amount equal to twenty percent (20%) of the preceding

month's income and forward payments to the Clerk of the Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2).

3.  **DIRECTS** the Clerk of the Court to serve a copy of this Order on Jeff Macomber, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001, by U.S. Mail, or by forwarding an electronic copy to trusthelpdesk@cdcr.ca.gov.

4.  **DISMISSES** Plaintiff's complaint [Dkt. 1] without prejudice and with leave to amend, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

5.  **GRANTS** Plaintiff forty-five (45) days leave from the date of this Order in which to file a First Amended Complaint which cures the deficiencies of pleading noted in this Order. Plaintiff's First Amended Complaint must be complete by itself without reference to any previous version of his pleading; Defendants not named and any claims not re-alleged in the First Amended Complaint will be considered waived. *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be considered "waived if not repled"). If Plaintiff fails to timely amend, the Court will enter a final Order dismissing this civil action. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED.**

Dated: August 25, 2025

Hon. Jinsook Ohta
United States District Judge